James Elliot **PATTERSON, Jr.,** Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 09–97–312 CR**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 14, 1998.

Decided Nov. 18, 1998.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty., Wayln G. Thompson, Asst. Criminal Dist. Atty., Beaumont, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

James Elliot Patterson was indicted for capital murder. Subsequently, a jury found Patterson guilty of killing Coy Roundtree during the course of a robbery, by hitting Roundtree with a piece of concrete. The State waived the death penalty, and the court sentenced Patterson to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Arguing there is insufficient evidence to support the underlying offense of robbery and contending the trial court erred in admitting hearsay, Patterson appeals his conviction.

## SUFFICIENCY OF THE EVIDENCE OF ROBBERY

The indictment in this case alleged capital murder on the basis the murder occurred while the defendant was in the course of committing and attempting to commit robbery. In his first issue, Patterson argues the evidence was insufficient to establish robbery or attempted robbery.

■ The standard of review for sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *See Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991). We measure the sufficiency of the evidence against a hypothetically correct charge which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried . . . . regardless of the specific wording of the jury charge actually given." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

■ In reviewing the legal sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979). The jury is the sole judge of the weight and credibility of the evidence and the reasonable inferences to be drawn therefrom. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex.Crim. App.1995).

■ To qualify as capital murder under TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon 1994), the killer's intent to rob must be formed before or at the time of the murder. *See Alvarado*, 912 S.W.2d at 207; *Robertson v. State*, 871 S.W.2d 701, 705 (Tex.Crim.App. 1993). To prove the murder occurred in the course of a robbery, there must be evidence from which the jury could rationally conclude, beyond a reasonable doubt, that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the

murder. *Id.* The requisite intent may be inferred from the defendant's conduct. *Id.*

In the instant case, Patterson, along with a co-defendant named Kennedy, murdered Coy Roundtree by hitting the victim with a piece of concrete. Investigating the crime scene afterwards, the police found the victim lying on a sidewalk in a puddle of blood with a head injury. Although the victim was found with very little money on his person, his wallet and other personal items were found on or near his body.

Patterson argues the evidence is insufficient to support the offense of robbery. Specifically, he argues there is no evidence of any money or property recovered from Patterson or Kennedy, no evidence property was taken from the victim, and no evidence any money or property was actually missing from the scene. He contends that it is of great consequence that some of the decedent's personal possessions, including his wallet, were found on or near his person.

■ To prove the underlying offense of robbery, it is not necessary for the State to prove that property was actually taken; proof of a completed theft is not required. *See Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim.App.1996). "While an intent to steal must be shown in order to prove an attempted theft, this intent may be inferred from circumstantial evidence." *Id.* (citing *McGee v. State*, 774 S.W.2d 229, 235 (Tex.Crim.App. 1989)).

■ Immediately prior to the murder, Serrvial Hillard, a witness for the State, observed Patterson and Kennedy arguing with the victim. Hillard testified that Patterson and Kennedy were "arguing" and "talking rough" with the victim and demanding that Roundtree buy them drinks. Although he did not see the actual beating, Hillard saw the victim on the ground immediately thereafter with the two attackers standing over him with bricks in their hands.

In addition to Hillard's testimony, the testimony of Sandra Matthews provides evidence that Patterson formed the intent of theft prior to or during the murder. Matthews testified she overheard a conversation, the day following the murder, where Kenne-

dy and Patterson were discussing the murder with another man. She testified as follows:

Q What were they talking about?

A Talking about the death of the old man.

Q And what specifically—were they describing how he died or something?

A Yes, sir.

Q And can you tell us basically what they were talking about?

A About how they hit the old man in the head and made him—said they hit that old white m—— f—— in the head, asked him for his money and he gave it up. . . .

. . .

So, [Kennedy] said, "I did hit that m—— f—— in the head and took his money."

Q And [Patterson's] right there with him.

A Yeah. And then later on [Patterson] say, "Man, you talk too mf much. Shut up. Let's go."

Matthews additionally testified that Kennedy had "a lot of money" when previously he had none.

The testimony of Matthews and Hillard constituted sufficient evidence from which a jury could rationally conclude, beyond a reasonable doubt, that Patterson formed the intent to steal from the victim prior to or during the commission of the murder. The evidence was legally sufficient to establish robbery. Patterson's first issue is overruled.

### HEARSAY

In his second issue, Patterson argues the "trial court erred in admitting hearsay." After witnessing the altercation between Kennedy, Patterson, and the victim, Hillard went to a bus station. Hillard told people there that Patterson and Kennedy had killed the "old man down the street." Laura Owens was one of the persons present. Over Patterson's objection, Owens was allowed to testify concerning Hillard's statements. Patterson contends this testimony was inadmissible

hearsay. The record reveals Owens' testimony:

Q And did [Hillard] tell you something that he had just saw down the street?

A Yes, he did.

Q What did he tell you?

[Defense Counsel]: Objection, Your Honor, hearsay.

THE COURT: Overruled.

Q What did [Hillard] tell you he saw?

A [Hillard] said he seen [Patterson] and—it was [Patterson] and [Kennedy]—they call him Ronald Kennedy—had killed this white man by the Fina Store.

Patterson argues it was incumbent upon the State as the proponent of the hearsay to establish a legitimate purpose for the admission of the otherwise inadmissible hearsay. On appeal, the State argues the testimony was admissible as an exception to the hearsay rule as either a present sense impression or an excited utterance.[1] At trial, however, the State did not respond to Patterson's hearsay objection.

▬ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). Tex.R. Evid. 802 provides: "Hearsay is not admissible except as provided by statute or these rules. . . ." Once a defendant preserves error by raising an objection to hearsay, the burden then shifts to the State to show that the evidence is admissible pursuant to some exception to the hearsay rule. *See Cofield v. State*, 891 S.W.2d 952, 954 (Tex.Crim.App. 1994) (citing *Long v. State*, 800 S.W.2d 545, 548 (Tex.Crim.App.1990)); *see also Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App. 1992); *Smith v. State*, 779 S.W.2d 417, 429–30 (Tex.Crim.App.1989). Following the precedent set forth by the Court of Criminal Appeals, this court has repeatedly held that, following a proper objection, the proponent of otherwise inadmissible hearsay must establish a legitimate purpose for the admis-

---

1. We decline to discuss if present sense impression or excited utterance are applicable exceptions in the instant case. For a thorough discussion by this court on the subject of present sense impression, refer to *1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell) v. State*, 935 S.W.2d 480 (Tex.App.— Beaumont 1996, no writ).

sion of the evidence. *See Kroopf v. State*, 970 S.W.2d 626, 628–29 (Tex.App.—Beaumont 1998, no pet); *DuBose v. State*, 774 S.W.2d 328, 329 (Tex.App.—Beaumont 1989, pet. ref'd).

■ In the instant case, on its face, the testimony is hearsay. From the cold record before us, it appears the trial court immediately overruled Patterson's objection without giving the State an opportunity to indicate whether an exception was applicable.[2] *See, e.g., Long*, 800 S.W.2d at 548. Therefore, although the statement may have been admissible as an exception to the hearsay rule, the trial court "fell into error in admitting plain hearsay testimony." *Dorado*, 843 S.W.2d at 38.

■ Tex.R.App. P. 44.2(b) requires that any error that does not affect substantial rights must be disregarded. We find the trial court's error in admitting the testimony did not affect Patterson's substantial rights. Essentially the same evidence was admitted when Hillard testified, previous to Ms. Owens, that while at the bus stop he told people what he had seen. Hillard's testimony is as follows:

Q Okay. Now, did you see both [Kennedy] and [Patterson] standing over the old man with a piece of brick in their hand?

A Yeah.

Q And what did you do after you saw that?

A I just rode off and come back down Ewing to go by the bus station and went home.

Q And when you went to the bus station, who did you see at the bus station?

A Lavergne—and I can't call her daughter's name. I know I saw Lavergne.

Q Lavergne?

A Yeah.

Q And did you see a guy by the name of Eddie Ray there?

A Eddie Ray and Rob.

Q Eddie Ray and Rob?

A Yeah. That's the only way I know them. That's not their real name. That's who I call them.

Q That's just their street names.

A Yeah.

Q Did you later see [Patterson] and [Kennedy] come up?

A Yeah. I got on my bicycle and rode off. I didn't want to be bothered with them.

Q Did you tell everybody there, like, Vern and Rob and Eddie Ray, what you had just seen down the street?

A Yeah, I told them.

Q What did you tell them?

A I told them they had killed that old man down the street.

As essentially the same evidence Ms. Owens testified to had already been admitted through Hillard's testimony, Patterson suffered no harm when the evidence was admitted through Ms. Owens' testimony. Patterson's second issue is overruled.

We affirm the judgment and sentence of the trial court.

AFFIRMED.

WALKER, Chief Justice, concurring.

While I concur in the result of this case, I strongly disagree with the majority's analysis of the hearsay issue. Essentially, the majority holds that when a party, in this case the State, proffers evidence that contains hearsay, said party is saddled with the "burden" of establishing a legitimate purpose (an exception or otherwise) for the admission of said hearsay evidence, even in the absence of a request from either the trial court or opposing counsel for the party to provide the exception. In the instant case, appellant voiced a general hearsay objection which was simply and quickly overruled by the trial court without further comment or request for elaboration. Nevertheless, the majority finds error by the trial court in admitting the hearsay statement in question but further finds the error did not affect appellant's substantial rights thereby affirming appellant's conviction.

2. The record does not reflect if the trial judge paused or mused over his ruling. Therefore, we assume the ruling was immediate and deprived the State of an opportunity to respond.

The majority cites two cases in support of their creation of this procedural "burden" vis-a-vis alleged inadmissible hearsay, *Du-Bose v. State*, 774 S.W.2d 328 (Tex.App.—Beaumont 1989, pet. ref'd) and *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App. 1992). *DuBose* does not establish a per se rule requiring the proponent of any hearsay statement to, *sua sponte*, also voice the exception to the hearsay rule in order for said statement to be admissible. As I read *Du-Bose*, the proponent of a hearsay statement previously found to be "otherwise inadmissible" must thereafter establish some "legitimate purpose" for admissibility or a trial court errs in admitting it. TEX.R.CRIM. EVID. 802 provides that hearsay is not admissible "*except as provided by statute or these rules.*" (emphasis mine). In the instant case, there was no prior finding that the out-of-court statement in question was "otherwise inadmissible." Rule 802 expressly recognizes the existence of exceptions to the general rule of inadmissibility as to hearsay. At the risk of appearing rather elementary, the rule appears to contemplate the existence of two types of hearsay: admissible and inadmissible. Therefore, an objection solely based upon the term "hearsay" should not be considered to possess talismanic qualities always requiring a prompt and hearty "sustained" from the trial court.

In *Dorado*, the error involved the State's failure to comply with a mandatory statutory provision involving notice to the defendant before "outcry testimony" will be admissible at trial as an exception to the hearsay rule. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (Vernon Pamph.1998). As the testimony in question in the instant case did not involve "outcry testimony," the *Dorado* case is completely inapplicable to the issue before us.

Absent from the majority's opinion is our recent case of *Kroopf v. State*, 970 S.W.2d 626 (Tex.App.—Beaumont 1998, no pet.). Although not the author, I joined in the unanimous opinion. Kroopf was charged with possession of marijuana which authorities discovered in a certain apartment located in Beaumont. At trial, in order to prove Kroopf's connection with the apartment, the

State attempted to introduce into evidence a letter Kroopf had received from a friend in which the friend listed Kroopf's address as that of the apartment in question. *Id.* at 628–629. In finding error by the trial court in admitting the letter, we held the following:

> In its brief, the State argues the letter is admissible under rules 106 and 107 of the Texas Rules of Criminal Evidence. [footnote omitted] At trial, however, the State did not respond to Kroopf's hearsay objection. Even though the statement may be admissible as an exception to the hearsay rule, it was the burden of the State, as a proponent of the evidence, to invoke the exception. *Moreno v. State*, 858 S.W.2d 453 (Tex.Crim.App.1993); *Smith v. State*, 779 S.W.2d 417, 430 (Tex.Crim.App.1989). The trial court "thereby fell into error in admitting plain hearsay testimony." *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim. App.1992).

*Id.* at 629. As in the instant case, we concluded that the error did not affect Kroopf's substantial rights so the point of error was overruled.

Having carefully re-examined the authority relied upon by us in *Kroopf*, I must now make a very humble about-face and turn away from the holding which I supported in that case regarding the hearsay issue. In *Moreno*, I can find no appellate complaint involving hearsay. The case, therefore, has no authoritative value whatsoever with regard to the hearsay issue raised in *Kroopf*. While the *Smith* case does contain a discussion of a hearsay complaint, there is nothing contained in that portion of the opinion to indicate that the Court of Criminal Appeals was placing any sort of burden on the proponent of hearsay. The *Smith* opinion does indicate that the State "argued at trial" that the elicited hearsay was admissible under a particular statutory provision. *Id.* at 429. The *Smith* Court then opined that the hearsay, if relevant at all, may have been admissible under the "present state of mind" exception to the hearsay rule. *Id.* at 430. Immediately thereafter, the Court states: "As proponent of the evidence, however, the State did not invoke this exception." *Id.* This sentence, in my humble opinion, is

merely an observation gleaned from the record and can in no way be construed as placing an affirmative burden on the proponent of hearsay to voluntarily accompany the proffer with an exception. Therefore, I find *Smith* also fails to contain any authority for the hearsay issue raised in *Kroopf.* In short, after carefully re-examining *Kroopf* and its authorities, I find that we wrongly held the trial court erred in admitting the letter because of the State's failure to carry its burden to also voice an exception at the time of proffer.

To be sure, cases do require the proponent of hearsay to comply with mandatory language contained in a statute or rule in order for an exception to apply so as to make the tendered hearsay admissible. *See Cofield v. State,* 891 S.W.2d 952, 954 (Tex.Crim.App. 1994) and *Johnson v. State,* 925 S.W.2d 745, 749–750 (Tex.App.—Fort Worth 1996, pet. ref'd). In *Long v. State,* 800 S.W.2d 545, 548 (Tex.Crim.App.1990), the Court specifically placed such a burden on the State when attempting to admit "outcry" testimony under art. 38.072. The Court immediately noted the recognized exception when it stated:

> However, because the trial court immediately overruled the objection, instead of immediately convening a hearing, the State was *not* required to indicate whether any exception was applicable, or to even show it had complied with the provisions of the statute.

*Id.* (emphasis mine)

I therefore conclude that absent a specific request, or a mandatory statute or rule *explicitly* to the contrary, specific authority does not exist requiring the proponent of hearsay to volunteer how such hearsay is admissible prior to or contemporaneously with proffering the evidence. Because the majority clearly creates such a duty on the proponent, I must indicate my disagreement by filing this concurrence.